## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

HIKEEM GREEN,

                                        Plaintiff,

            v.                                          9:18-CV-703
                                                        (BKS/ATB)

DAVID HAIMES,

                                        Defendant.

HIKEEM GREEN, Plaintiff, pro se
NICHOLAS L. ZAPP, Asst. Attorney General for Defendants

ANDREW T. BAXTER
United States Magistrate Judge

### ORDER AND REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation by the Honorable Brenda K. Sannes, United States District Judge. Plaintiff brought this civil rights action alleging that he was denied constitutionally adequate medical care while incarcerated at various different facilities operated by the New York State Department of Corrections and Community Supervision ("DOCCS"). (Dkt. No. 1).

Presently before the court is defendant David Haimes's motion to dismiss plaintiff's second amended complaint pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 29). Plaintiff has submitted papers in opposition to defendant Haimes's motion.[1] (Dkt. No. 23). For the following reasons, this court recommends denying defendant Haimes's motion to dismiss.

---

[1]Plaintiff filed papers in opposition to defendant Haimes's motion to dismiss the amended complaint, which was deemed moot when Judge Sannes accepted the second amended complaint as the operative pleading. (*See* Procedural Histor*y, infra*). The court will, however, consider plaintiff's opposition papers in addressing the instant motion, as defendant Haimes's request for relief is virtually identical.

# I.    **Procedural History**

Plaintiff filed his initial complaint on June 15, 2018.  (Dkt. No. 1).  At the same time, plaintiff filed a motion for leave to proceed in forma pauperis ("IFP").  (Dkt. No. 2).  Plaintiff's initial motion to proceed IFP was denied by Judge Sannes on June 18, 2018, because his application was deemed incomplete.  (Dkt. No. 4).  On July 2, 2018, plaintiff filed a second motion to proceed IFP.  (Dkt. No. 7).  On October 16, 2018, Judge Sannes issued an order in which she granted plaintiff's motion to proceed IFP, dismissed with prejudice plaintiff's claims for money damages pursuant to Section 1983 against the defendants in their official capacity, dismissed without prejudice plaintiff's Eighth Amendment claims and state law claims against all remaining defendants, and directed plaintiff to file an amended complaint within thirty days if he wished to proceed with the action.  (Dkt. No. 11).

Plaintiff filed his amended complaint on November 7, 2018.  (Dkt. No. 13).  On December 17, 2018, Judge Sannes issued an order deeming that the amended complaint was the operative pleading, and ordering that all claims be dismissed except for plaintiff's Eighth Amendment claim against defendant Haimes, which survived sua sponte review and required a response.  (Dkt. No 14).

On January 14, 2019, plaintiff filed a *second amended* complaint.  (Dkt. No. 16).[2] However, on February 15, 2019, defendants filed a motion to dismiss the *amended*

---

[2]On the same day, plaintiff also filed a letter motion requesting an entry of default as to defendant Haimes.  (Dkt. No. 24).  Defendant Haimes filed a response in opposition to plaintiff's letter motion on April 1, 2019.  (Dkt. No. 28).  On April 15, 2019, plaintiff filed a reply in further support of his letter motion.  (Dkt. No. 31).  On April 25, 2019, this court issued an order denying plaintiff's request for entry of default.  (Dkt. No. 32).

complaint. (Dkt. No. 21). Plaintiff filed a response in opposition to defendant's motion on March 1, 2019. (Dkt. No. 23). On March 4, 2019, Judge Sannes issued an order deeming that the *second amended* complaint was the operative pleading, thereby mooting the pending motion to dismiss, and further ordering that all claims asserted in the second amended complaint be dismissed except for plaintiff's Eighth Amendment claim against defendant Haimes. (Dkt. No. 25). Defendant Haimes filed the pending motion to dismiss plaintiff's second amended complaint on April 5, 2019. (Dkt. No. 29).

## II.   **Facts**

The facts asserted in the second amended complaint are almost identical to those set forth in the initial complaint and the amended complaint, and have been summarized at length by Judge Sannes in her prior decisions. (Dkt. Nos. 11, 14, 25). I will briefly restate only the facts relevant to the instant motion to dismiss.

On July 1, 2013, plaintiff was transferred to DOCCS custody, having been released from the custody of the City of New York, Department of Corrections ("DOCS"). (Dkt. No. 16 at 5). Prior to his transfer, plaintiff was informed by DOCS medical staff that he required treatment for syphilis. (*Id.* at 4). Between 2013 and 2015, plaintiff was incarcerated at various different DOCCS facilities, where he claims he was not provided adequate care and treatment for his syphilis, but was told that the disease needed only to be "monitored." (*Id.* at 5-6).

In October 2015, plaintiff was transferred to Five Points Correctional Facility ("Five Points C.F."), where he was placed under the care of defendant Dr. David Haimes ("Haimes"). At Five Points C.F., plaintiff was examined and underwent blood

work and testing to determine the status of his syphilis. (*Id.*). On or about February 12, 2016, the results of plaintiff's tests indicated that his syphilis was "still active" and required treatment. (*Id.*). Plaintiff was given "penicillin pills" by a nurse at Five Points C.F. (*Id*). He was not provided any further treatment or testing for his syphilis at Five Points C.F., where he remained incarcerated until April 19, 2016. (*Id.* at 7).

Plaintiff was transferred to and from various DOCCS facilities between April 2016 and October 2017. (*Id.* at 6-9). In June 2017, while incarcerated at Coxsackie Correctional Facility, plaintiff was being treated for an unrelated medical issue when he was told that his syphilis was still active, and that there was no record of any proper treatment administered at the DOCCS facilities in which he had previously been incarcerated. (*Id.* at 8). Plaintiff underwent a lumbar puncture to determine the status of his disease, which confirmed that plaintiff "tested positive for neurosyphilis and was in need of treatment." (*Id.*).

In September 2017, while incarcerated at Washington Correctional Facility, plaintiff was under the care of Dr. Neil Trachtman ("Dr. Trachtman"). At some unknown time, Dr. Trachtman told plaintiff that the medication he received at Five Points C.F. was Zithromax, which "was not the standard and accepted treatment" for plaintiff's syphilis. (*Id.* at 6). Dr. Trachtman advised plaintiff that they would administer the "necessary and recommended treatment of penicillin," which required the continuous, intravenous administration of penicillin for ten days. (*Id.* at 9). Plaintiff received intravenous penicillin from September 21, 2017 through October 2, 2017. (*Id.*).

4

## III.  Motion to Dismiss

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555).

When considering a motion to dismiss pursuant to Rule 12(b)(6), the court's consideration is limited to the factual allegations as stated in the complaint, documents attached to the complaint as exhibits or incorporated into the complaint by reference, and matters of which the court can take judicial notice.  *Portillo v. Webb*, No. 16 Civ. 4731 (VEC/GWG), 2017 WL 4570374, at *1 (S.D.N.Y. Oct. 11, 2017) (quoting *Brass v. Am. Film Tech.*, 987 F.2d 142, 150 (2d Cir. 1993) (citing *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991)).  A court may take judicial notice of a public record pursuant to Fed. R. Evid. 201(b).  *Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000).

## IV.  Exhaustion of Administrative Remedies

### A.  Legal Standards

The Prison Litigation Reform Act, ("PLRA"), 42 U.S.C. §1997e(a), requires an inmate to exhaust all available administrative remedies prior to bringing a federal civil rights action.  The exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and regardless of the subject matter of the claim.  *See Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir.

5

2004)(*abrogated by Ross v. Blake*, __ U.S. __, 136 S. Ct. 1850, 1857 (June 6, 2016)) (citing *Porter v. Nussle,* 534 U.S. 516, 532 (2002).  Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings.  *Id.* at 675.

The failure to exhaust is an affirmative defense that must be raised by the defendants.  *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004).  As an affirmative defense, it is the defendants' burden to establish that plaintiff failed to meet the exhaustion requirements.  *See, e.g., Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (citations omitted).

The Supreme Court has held that in order to properly exhaust an inmate's administrative remedies, the inmate must complete the administrative review process in accordance with the applicable state rules.  *Jones*, 549 U.S. at 218-19 (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)).  In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court.  548 U.S. at 90-103.

The grievance procedure in New York is a three-tiered process.  The inmate must first file a grievance with the Inmate Grievance Resolution Committee ("IGRC").  N.Y. Comp. Codes R. & Regs., tit. 7 §§ 701.5(a)(1) and (b).  An adverse decision of the IGRC may be appealed to the Superintendent of the Facility.  *Id*. § 701.5(c).  Adverse decisions at the Superintendent's level may be appealed to the Central Office Review Committee ("CORC").  *Id*. § 701.5(d).  The court also notes that the regulations governing the Inmate Grievance Program encourage the inmate to "resolve his/her

complaints through the guidance and counseling unit, the program area directly affected, or other existing channels (informal or formal) prior to submitting a grievance." *Id.* § 701.3(a) (Inmate's Responsibility).  There is also a special section for complaints of harassment.  *Id.* § 701.8.  Complaints of harassment are handled by an expedited procedure which provides that such grievances are forwarded directly to the superintendent of the facility, after which the inmate must appeal any negative determination to the CORC.  *Id.* §§ 701.8(h) & (i), 701.5.

Until recently, the Second Circuit utilized a three-part inquiry to determine whether an inmate had properly exhausted his administrative remedies.  *See Brownell v. Krom*, 446 F.3d 305, 311-12 (2d Cir. 2006) (citing *Hemphill v. State of New York*, 380 F.3d 680, 686 (2d Cir. 2004).  The *Hemphill* inquiry asked (1) whether the administrative remedies were available to the inmate; (2) whether defendants' own actions inhibiting exhaustion estops them from raising the defense; and (3) whether "special circumstances" justify the inmate's failure to comply with the exhaustion requirement.  *Id.*

The Supreme Court has now made clear that courts may not excuse a prisoner's failure to exhaust because of "special circumstances." *Ross v. Blake*, __ U.S. __, 136 S. Ct. 1850, 1857 (June 6, 2016).  "'[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion.'" *Riles v. Buchanan*, 656 F. App'x 577, 580 (2d Cir. 2016) (quoting *Ross*, __ U.S. at __, 136 S. Ct. at 1857).  Although *Ross* has eliminated the "special circumstances" exception, the other two factors in *Hemphill* – availability and estoppel – are still valid.  The court in *Ross* referred to "availability" as a "textual exception" to mandatory exhaustion, and

7

"estoppel" has become one of the three factors in determining availability. *Ross*, __ U.S. at __, 136 S. Ct. at 1858. Courts evaluating whether an inmate has exhausted his or her administrative remedies must focus on whether those remedies were "available" to the inmate. *Id. See also Riles*, 656 F. App'x at 580-81. Defendants bear the burden of proving the affirmative defense of failure to exhaust. *Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016).

The court may consider the exhaustion issue on a 12(b)(6) motion to dismiss when it is clear from the face of the complaint that plaintiff has not exhausted his administrative remedies. *See Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74-75 (2d Cir. 1998) ("An affirmative defense may be raised by a . . . motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint."); *see also Lewis v. Havernack*, No. 9:12-CV-31 (GLS/DEP), 2013 WL 1294606, at *4 (N.D.N.Y. March 28, 2013) ("The exhaustion defense is one that is not particularly well-suited for resolution for a motion to dismiss, absent the clearest indication in a plaintiff's complaint that a failure to exhaust has occurred.") *Brito v. Vargas*, No. 01-CV-7753(FB/LB), 2003 WL 21391676, at *2 (E.D.N.Y. June 16, 2003) (granting defendants' motion to dismiss complaint in which inmate plaintiff admitted that he did not exhaust the grievance process).

## B.    Application

With respect to the exhaustion of his administrative remedies, plaintiff pled the following in his second amended complaint:

> Plaintiff has filed numerous requests and grievances to address
> and correct the problems, to which were denied. All

administrative remedies have been exhausted.
(Dkt. No. 16 at 4). Although this language does not, in and of itself, plainly indicate that plaintiff failed to satisfy the PLRA exhaustion requirement, defendants argue it incorporates by reference plaintiff's grievance documents for purposes of the instant motion. (Dkt. No. 29-1 at 6). A plaintiff's grievances may be considered on a Rule 12(b)(6) motion, where the plaintiff has referred to them in his complaint. *Bennett v. Care Correction Solution Medical Contractor*, No. 15 Civ. 3746, 2017 WL 1167325, at *4 (S.D.N.Y. Mar. 24, 2017) (citing *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). As such, an analysis of the grievance documents is warranted to determine whether the instant action is barred for plaintiff's failure to exhaust his administrative remedies prior to bringing suit.

On October 4, 2017, plaintiff prepared an Inmate Grievance Complaint at Washington Correctional Facility. (Dkt. No. 29-2 at 4-5). Under the category "Description of Problem," plaintiff alleged:

> When I first came into the state system 7/1/13, medical staff was aware of a medical situation of an infection in my system that needed to be treated. I was told wait until I arrive at my permanent facility which was Gouverneur C.F. From that time all the way to the present I was told that it just need[ed] to be monitored, even though I expressed my concerns that I did not receive proper treatment. On 8/18/17, I was sent for a spinal tap, and I was given the results which confirmed that it had progressed for failure of being treated, when it was first diagnosed. On 9/21/17 through 10/1/17, I received treatment for it. I'm still waiting for a follow-up to see if the problem has been corrected.

(*Id.* at 5).  When prompted to set forth an "Action Requested by Inmate," plaintiff wrote:

"Continuation of proper treatment, and follow-ups and test to make sure the problem has

been treated and corrected." (*Id.*)

On November 1, 2017, plaintiff prepared an appeal with respect to his October 4,

2017 grievance,[3] which stated:

> On 11/1/17, I had a follow-up with Dr. Tractman [sic] and was
> told that there will be no further tests done.  His reason being that
> for the problem the suggested dosage of medicine has been
> administered.
>
> This has been an ongoing problem since 2012/2013, and to which
> the nurse administrator responded that while I was at Five Point
> C.F., I was given penicillin pills to treat the problem.  According
> to Dr. Tractman [sic] and the book and guidelines for treating
> infections, penicillin pills is not listed as an option to treat the
> disease.  That is more for a dental problem.
>
> Solution: Further tests should be conducted to confirm that the
> treatment was corrected and successful.  Please consolidate this
> with the original grievance.  Thank you.

(*Id.* at 8).

On November 10, 2017, the Superintendent of Washington Correctional Facility

issued a determination based on plaintiff's grievances:

> Per the investigation, the grievant had a follow up with the
> Specialist on 9/14/17.  It was recommended that the grievant have
> a 10 day course of intravenous antibiotics.  The grievant went to
> Albany Medical Center on 9/21/17 and had an IV line in his arm
> so he could receive the antibiotics.  After placement of the IV, the

---

[3]It is unclear from defendants' submission whether the IGRC took any action based on
plaintiff's initial grievance, prior to plaintiff filing his grievance appeal. (Dkt. No. 29-2).

> grievant was admitted to Great Meadow infirmary and began his
> 10 day course of IV antibiotics.  The IV antibiotic treatments
> were completed on 10/1/17.  The IV line was removed on 10/2/17
> and the grievant was returned to Washington CF the same day.
> He is scheduled to follow up with the doctor at Washington CF
> in the near future.  For such reasons, this grievance is denied.

(*Id.* at 11).  On November 14, 2017, plaintiff filed an "Appeal Statement" with respect to the

Superintendent's decision to the CORC, stating:

> I had a follow-up with Dr. Tractman and was told that no further
> tests will be done, because the treatment was administered
> without the tests, how will it be known if the treatment was
> successful?

(*Id.*).

Defendants make three arguments in support of their motion to dismiss for failure to

exhaust.  First, defendants argue that plaintiff did not specifically name defendant Haimes

in his grievance, justifying dismissal of the federal claim now brought against him.  (Dkt.

No. 29-1 at 11).  Second, defendants argue that plaintiff's federal claim against defendant

Haimes is "outside the scope and in opposition" to the allegations contained in plaintiff's

grievance, also justifying dismissal.  (*Id.*).  Finally, defendant Haimes argues that plaintiff

failed to exhaust his administrative remedies because his initial grievance was untimely.

(*Id.*).  For the following reasons, defendants arguments are unavailing.

The Second Circuit has found that "the New York IGP regulations do not state that

a prisoner's grievance must name the responsible party." *Espinal*, 558 F.3d at 126.  Rather,

the prisoner must provide, inter alia, "a specific description of the problem." *Id.* at 127; *see*

*also* 7 N.Y.C.R.R. §§ 701.5(a)(2), 701.1(8). Thus, "[t]he pro se prisoner cannot be expected

11

to infer the existence of an identification requirement in the absence of a procedural rule stating that the grievance must include the names of the responsible parties." *Espinal* at 127. "Where New York's grievance procedures do not require prisoners to identify the individuals responsible for alleged misconduct, neither does the PLRA for exhaustion purposes." *Id*. Ultimately, in order to exhaust, a prisoner must allege facts sufficient to alert corrections officials "to the nature of the claim," and "provide enough information about the conduct" at issue "to allow prison officials to take appropriate responsive measures." *Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004); *see also Espinal,* 558 F.3d at 126 ("The point is that prison officials ha[ve] the necessary information to investigate the complaints and the opportunity to learn which officers were involved in the alleged incident"); *Brownell v. Krom*, 446 F.3d 305, 310 (2d Cir. 2006) ("While this Court has found it appropriate to afford pro se inmates a liberal grievance pleading standard, the grievance may not be so vague as to preclude prison officials from taking appropriate measures to resolve the complaint internally").  As stated by the Second Circuit, "[a]ll the grievance need do is object intelligibly to some asserted shortcoming." *Brownell,* 446 F.3d at 310.

Based on the aforementioned, it cannot be said that plaintiff failed to exhaust his administrative remedies for failure to specifically name defendant Haimes in his grievance. In support of their argument to the contrary, defendants cite the Second Circuit's decision in *Hill v. Curcione,* 657 F.3d 116 (2d Cir. 2011).  Hill commenced a federal civil rights

action against various employees of the Niagara County Jail for alleged violations of his Eighth Amendment rights. (*Id.*). The defendants in *Hill* filed a motion for summary judgment, which eventually came before the Second Circuit on appeal. The Second Circuit determined that the district court properly granted summary judgment in favor of defendant Williams, for failure to exhaust the requisite administrative review process. (*Id.* at 124). Specifically, the Second Circuit stated:

> The grievance filed by [plaintiff], the first step in the administrative process for a prisoner complaining of conditions at the Niagara County Jail, does not name [defendant] Williams. There being no evidence that a grievance was ever filed against [defendant] Williams by [plaintiff], the exhaustion requirement of the PLRA has not been satisfied, and no genuine issue of material fact stands in the way of summary judgment[.]

(*Id.*). Here, defendant Haimes's reliance on *Hill* is misplaced. In 2009, the Second Circuit explicitly addressed the issue of whether a DOCCS inmate was required to name the responsible party in his grievance, finding that "New York's grievance procedures do not require prisoners to identify the individuals responsible for alleged misconduct, [therefore] neither does the PLRA for exhaustion purposes." *Espinal,* 558 F.3d at 127. The district courts in this circuit have since relied on *Espinal* in rejecting such a requirement relative to claims falling under the purview of DOCCS administrative procedures. *See Allen v. Keanen,* No. 13-CV-718, 2019 WL 1486679, at *2 (W.D.N.Y. Apr. 4, 2019); *Woodward v. Lytle,* No. 9:16-CV-1174 (NAM/DEP), 2018 WL 6179427, at *2 (N.D.N.Y. Nov. 27, 2018); *Tolliver v. N.Y. State Dept. of Corr. Serv.,* No. 08 Civ. 4561, 2009 WL 618371, at *4

(S.D.N.Y. 2009). Hill, however, was incarcerated at Niagara County Jail, and as such his grievance requirements were dictated by the relevant Niagara County grievance procedures, and not DOCCS policy.[4] As such, the rule as set forth in *Espinal,* as opposed to *Hill,* is applicable to the instant matter, because the determination of whether a plaintiff has properly exhausted his administrative procedures turns on the specific grievance requirements of the facility where Plaintiff was confined. *See Jones v. Bock*, 549 U.S. 199, 218 (2007) ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion"). Accordingly, plaintiff's failure to specifically name defendant Haimes in his grievance is of no consequence.

The proper inquiry here, and defendant Haimes's second argument in support of his motion to dismiss, is whether plaintiff communicated the claim which he now presents in federal court in terms that allowed DOCCS to take appropriate responsive measures. In his October 4, 2017 initial grievance, plaintiff stated that when he was first transferred to DOCCS custody, medical staff were aware that he suffered from an infection that required treatment. (Dkt. No. 29-2 at 5). Plaintiff also expressed his concern that proper medical

---

[4]Admittedly, the exhaustion analysis in *Hill* is brief, and does not provide significant detail explaining the basis for the Second Circuit's decision, nor does it mention the grievance requirements set forth by the Niagara County prison system. *Hill,* 657 F.3d at 124. Nevertheless, in light of the clear factual discrepancies between *Hill* and the instant matter, *Espinal* is more appropriately relied on here with respect to the issue of DOCCS' identification requirement, or lack thereof.

14

treatment for his infection had been delayed and/or withheld since he was transferred to DOCCS custody and throughout 2017, within each DOCCS facility he resided. (*Id.*). Plaintiff explained that the recent results of a spinal tap confirmed his suspicions that his infection had progressed as a result of DOCCS failure to treat his condition. (*Id.*)  He acknowledged that he had recently begun proper treatment for the infection. (*Id.*).  Plaintiff offered additional detail in his November 1, 2017 grievance appeal, conveying Dr. Trachtman's opinion that plaintiff was given the wrong medicine to treat his disease by medical staff at Five Points C.F. (*Id.* at 8).  Plaintiff now alleges, in his federal court action, that defendant Haimes was deliberately indifferent to plaintiff's serious ongoing medical needs and treatment relative to his syphilis infection while he was confined at Five Points C.F.

As such, the information set forth in plaintiff's grievance was sufficient to place DOCCS officials on notice of defendant Haimes' alleged deliberate indifference in treating plaintiff's syphilis. *See Ocampo v. Flischer*, No. 11-CV-4583, 2014 WL 7422763, at *3 (E.D.N.Y. Dec. 31, 2014) (finding plaintiff's grievance, alleging defendants' failure to provide plaintiff with a new Hepatits C treatment after his first treatment was unsuccessful, was sufficient to exhaust his claim of deliberate indifference to serious medical condition). Although plaintiff's grievance did not name defendant Haimes, it specifically addressed the course of medical treatment provided to plaintiff at Five Points C.F. and "plac[ed] defendant on notice of what, substantively, [was] claimed in order to permit a proper investigation."

*Hawthorne v. Nurse Sturgeon,* No. 9:17-CV-438 (LEK/CFH), 2018 WL 4290458, at *6 (N.D.N.Y. Aug. 8, 2018); *see also Dizak v. Hawks*, No. 9:15-CV-1171, 2018 WL 1894542, at 11 (N.D.N.Y. Jan. 9, 2018) (finding plaintiff had provided enough information to allow an investigation into defendant sergeant's actions where grievance did not specifically name the defendant sergeant, but described an incident of excessive force where "a sergeant" was present).

As the Second Circuit has made clear, "the grievant need not lay out the facts, articulate legal theories, or demand particular relief." *Brownell,* 446 F.3d 305 at 310 (citations omitted). Here, plaintiff's grievance was sufficient to direct DOCCS officials into an investigation of plaintiff's medical care at Five Points C.F., in order to determine who his treating physician was, the course of treatment plaintiff received under that physician's care, and the merits of plaintiff's complaint regarding that course of treatment. As such, the deliberate indifference claim against defendant Haimes was sufficiently raised in, and not so broad as to extend beyond the scope of, plaintiff's grievance. *Cf. Wright v. Potter,* No. 9:14-CV-01041 (DNH/TWD), 2016 WL 5219997, at *5 (N.D.N.Y. Jun. 28, 2016) (dismissing plaintiff's deliberate indifference to medical treatment claim for failure to exhaust legal remedies where underlying grievance alleged assault by corrections officers, but failed to reference any medical personnel and failed to reference receiving inadequate medical treatment); *Evan v. Manos*, 336 F. Supp. 2d 255, 259 (W.D.N.Y. Sep. 23, 2004) (dismissing inmate's claims against dentist for failure to exhaust because "there [wa]s

16

simply no suggestion anywhere in plaintiff's grievance that [the dentist] . . . had failed to provide him with adequate dental care") .

The fact that plaintiff's grievance provided prison officials with sufficient information is clear from the November 10, 2017 response from the Superintendent, acknowledging that proper procedures had been put into place to provide plaintiff with the recommended treatment for his condition – a 10 day course of intravenous antibiotics. (Dkt. No. 29-2 at 11); *See Ocampo,* 2014 WL 7422763, at *3; *Delano v. Rendle*, No. 9:13-CV-00070 (NAM/TWD), 2016 WL 4146476, at *10 (N.D.N.Y. July 12, 2016).

Last, defendant Haimes argues that plaintiff's grievance was untimely, having been filed 17 months after leaving Five Points C.F. (Dkt. No. 29-1 at 11). In 2011, the Second Circuit joined the Seventh and Tenth Circuits in holding that the exhaustion requirement of the PLRA is satisfied by an untimely filing of a grievance if it is accepted and decided on the merits by the appropriate prison authority. *Hill,* 657 F.3d at 125. Here, plaintiff filed his initial grievance on October 4, 2017, and his grievance appeal on November 1, 2017. (Dkt. No. 29-2 at 4-5, 8). On November 10, 2017, the Superintendent of Washington C.F. issued a decision denying plaintiff's grievance, because plaintiff had already received the proper medical treatment to address his infection. (*Id.* at 11). Accordingly, plaintiff has met the exhaustion requirements in order to bring the instant deliberate indifference claim against defendant Haimes.

## V.    Deliberate Indifference to Medical Condition

### A.    Legal Standards

In order to state a claim based on constitutionally inadequate medical treatment, the plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). There are two elements to the deliberate indifference standard. *Smith v. Carpenter*, 316 F.3d 178, 183–84 (2d Cir. 2003). The first element is objective and measures the severity of the deprivation, while the second element is subjective and ensures that the defendant acted with a sufficiently culpable state of mind. *Id.* at 184 (citing *inter alia Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

### 1.    Objective Element

In order to meet the objective requirement, the alleged deprivation of adequate medical care must be "sufficiently serious." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Determining whether a deprivation is sufficiently serious also involves two inquiries. *Id.* The first question is whether the plaintiff was actually deprived of adequate medical care. *Id.* Prison officials who act "reasonably" in response to the inmates health risk will not be found liable under the Eighth Amendment because the official's duty is only to provide "reasonable care." *Id.* (citing *Farmer*, 511 U.S. at 844–47).

The second part of the objective test asks whether the purported inadequacy in the

medical care is "sufficiently serious." *Id.* at 280. The court must examine how the care was inadequate and what harm the inadequacy caused or will likely cause the plaintiff. *Id.* (citing *Helling v. McKinney*, 509 U.S. 25, 32–33 (1993)). If the "unreasonable care" consists of a failure to provide **any** treatment, then the court examines whether the inmate's condition itself is "sufficiently serious." *Id.* (citing *Smith v. Carpenter*, 316 F.3d 178, 185–86 (2d Cir. 2003)). However, in cases where the inadequacy is in the medical treatment that was actually afforded to the inmate, the inquiry is narrower. *Id.* If the issue is an unreasonable delay or interruption of ongoing treatment, then the "seriousness" inquiry focuses on the challenged delay itself, rather than on the underlying condition alone. *Id.* (citing *Smith*, 316 F.3d at 185). The court in *Salahuddin* made clear that although courts speak of a "serious medical condition" as the basis for a constitutional claim, the seriousness of the condition is only one factor in determining whether the deprivation of adequate medical care is sufficiently serious to establish constitutional liability. *Id.* at 280.

## 2.    Subjective Element

The second element is subjective and asks whether the official acted with "a sufficiently culpable state of mind." *Id.* (citing *Wilson v. Seiter*, 501 U.S. 294, 300 (1991)). In order to meet the second element, plaintiff must demonstrate more than a "negligent" failure to provide adequate medical care. *Id.* (citing *Farmer*, 511 U.S. at 835–37). Instead, plaintiff must show that the defendant was "deliberately indifferent"

to that serious medical condition. *Id*. Deliberate indifference is equivalent to subjective recklessness. *Id.* (citing *Farmer*, 511 U.S. at 839–40).

In order to rise to the level of deliberate indifference, the defendant must have known of and disregarded an excessive risk to the inmate's health or safety. *Id.* (citing *Chance*, 143 F.3d at 702). The defendant must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he or she must draw that inference. *Chance*, 143 F.3d at 702 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). The defendant must be subjectively aware that his or her conduct creates the risk; however, the defendant may introduce proof that he or she knew the underlying facts, but believed that the risk to which the facts gave rise was "insubstantial or non-existent." *Farmer*, 511 U.S. at 844. The court stated in *Salahuddin* that the defendant's belief that his conduct posed no risk of serious harm "need not be sound so long as it is sincere," and "even if objectively unreasonable, a defendant's mental state may be nonculpable." *Salahuddin* 467 F.3d at 281.

Additionally, a plaintiff's disagreement with prescribed treatment does not rise to the level of a constitutional claim. *Sonds v. St. Barnabas Hosp. Correctional Health Services*, 151 F. Supp. 2d 303, 311 (S.D.N.Y. 2001). Prison officials have broad discretion in determining the nature and character of medical treatment afforded to inmates. *Id.* (citations omitted). An inmate does not have the right to treatment of his choice. *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986). Because plaintiff might

have preferred an alternative treatment or believes that he did not get the medical attention he desired does not rise to the level of a constitutional violation. *Id.*

### B.    Application

In the alternative, defendant Haimes argues that plaintiff fails to state a claim of deliberate indifference to a serious medical condition. (Dkt. No. 29-1 at 9-13). Specifically, defendant Haimes asserts that plaintiff cannot establish subjective recklessness, because prescribing the purportedly incorrect medication to treat syphilis does not amount to anything more than a disagreement over medication, which implicates medical judgments and not the Eighth Amendment. (Dkt. No. 29-1 at 12-13).

Defendant Haimes relies on *Smitherman v. N.Y. City Dept. of Corr.* in support of his position. 557 F. Supp. 877 (S.D.N.Y. 1983). Smitherman claimed defendants violated his constitutional rights by treating him for syphilis with the antibiotic vibramycin, which allegedly caused negative side effects including bleeding, dizziness, respiratory difficulty, and the development of a tumor. *Id.* at 877. The court dismissed Smitherman's allegations for, among other things, "amount[ing] to little more than a claim of medical malpractice," and as such lacking the requisite basis for a civil rights claim. *Id.* at 878.

Since *Smitherman* was decided in 1983, some Second Circuit precedent has recognized that instances of culpable, reckless "malpractice [ ] can rise to the level of deliberate indifference." *Parks v. Blanchette,* 144 F. Supp. 3d 282, 315 (D. Conn. 2015)

(citing *Hathaway v. Coughlin,* 99 F.3d 550, 554 (2d. Cir. 1996); *see also Chance v. Armstrong*, 143 F.3d 698, 703-04 (2d Cir. 1998) ("In certain instances, a physician may be deliberately indifferent if he or she consciously chooses 'an easier and less efficacious' treatment plan").  A number of district courts in this Circuit have interpreted this distinction to mean that "[m]edical decisions that are 'contrary to accepted medical standards,' may exhibit deliberate indifference, because the doctor has 'based his decision on something other than sound medical judgment.' " *Stevens v. Goord*, 535 F. Supp. 2d 373, 385 (S.D.N.Y. 2008) (citation omitted). "These courts have denied [dispositive relief] where a reasonable jury could conclude that conduct was a substantial departure from accepted professional judgment and that the evidence of risk was sufficiently obvious to infer the defendants' actual knowledge of a substantial risk to plaintiff." *Parks,* 144 F. Supp. 3d at 315 (citing *Stevens,* 535 F. Supp. 2d at 385) (citations and quotations omitted).

Judge Sannes ordered that plaintiff's deliberate indifference claim[5] against defendant Haimes survived initial review, based upon the Second Circuit's rulings as set forth in *Hathaway's* progeny.  (Dkt. No. 14 at 8).  There have been no further factual findings since, that would alter her decision.  Although discovery may reveal plaintiff has no evidentiary basis to establish that defendant Haimes was subjectively reckless or

---

[5] Judge Sannes' analysis of plaintiff's claim against defendant Haimes is set forth in her December 17, 2018 decision and order based on plaintiff's *amended complaint;* however she adopted the same basis for upholding the claim on her initial review of plaintiff's *second amended complaint*. (Dkt. No. 25 at 3).

deliberately indifferent in prescribing "Zithromax" to treat plaintiff in the first instance, we are not, at this time, inclined to dismiss plaintiff's action for failure to state a claim based on the pleadings alone.

**WHEREFORE**, based on the findings above, it is

**ORDERED,** that defendant's motion to dismiss the amended complaint (Dkt. No. 21) is **DENIED** as moot based on Judge Sannes's March 4, 2019 Decision and Order (Dkt. No. 25) accepting the second amended complaint as the operative pleading, and upon defendant's filing of the April 5, 2019 motion to dismiss the second amended complaint (Dkt. No. 29), and it is

**RECOMMENDED**, that defendant's motion to dismiss the second amended complaint (Dkt. No. 29) be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.

Dated: May 23, 2019

Hon. Andrew T. Baxter
U.S. Magistrate Judge

23