UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

HIKEEM GREEN,

                              Plaintiff,

   v.                                          9:18-CV-703 (BKS/ATB)

DAVID HAIMES,

                              Defendant.

---

HIKEEM GREEN, Plaintiff, pro se
NICHOLAS L. ZAPP, Asst. Attorney General for Defendant

ANDREW T. BAXTER
United States Magistrate Judge

## REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation by the Honorable Brenda K. Sannes, United States District Judge. Presently before the court is defendant's motion for summary judgment pursuant to Fed. R. Civ. P. 56. (Dkt. Nos. 45, 46). Plaintiff has failed to respond in opposition to the motion, despite being warned of the possible consequences of such failure and despite the court's sua sponte extension of his time to respond. (Dkt. Nos. 47, 48). For the following reasons, this court agrees with defendant Haimes and will recommend granting his motion, dismissing the complaint in its entirety.

**I.**    **Facts**

Plaintiff alleges that defendant Haimes did not afford him constitutionally adequate medical care. The operative pleading in this action is plaintiff's second amended complaint ("SAC"), as modified by Judge Sannes's March 4, 2019 initial order, dismissing all defendants except defendant Haimes. (Dkt. Nos. 16, 25). The court

will summarize the relevant facts as pertain to the remaining defendant.

While plaintiff was in the custody of the New York City Department of Corrections ("NYDOC"), from December 3, 2012 until July 1, 2013, the "medical staff" was aware that plaintiff needed treatment for syphilis. (SAC ¶ 15). Plaintiff states that they "made him aware of the problem." (*Id.*) Plaintiff alleges that the staff at NYDOC never adequately addressed his medical needs.[1] (SAC ¶ 17). Plaintiff states that he was transferred to the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") on July 1, 2013. (SAC ¶ 18). Plaintiff was initially housed at Ulster Correctional Facility ("Ulster"),[2] where he was given a physical examination, underwent medical testing, and his records were reviewed to "address any care and treatment" he may have needed while incarcerated. (SAC ¶ 19). Plaintiff claims that on July 3, 2013, he was told that he would receive follow-up care for his condition at his next facility. (SAC ¶ 20).

Plaintiff states that at the end of July, 2013, he was transferred from Ulster to Gouveneur Correctional Facility ("CCF") and was told by the medical staff that his "condition" need only be "monitored." (SAC ¶¶ 21-22). Based on this information,

---

[1] Plaintiff has a separate action against NYCDOC defendants and doctors who treated him for syphilis while he was in the Eastern District of New York. *See Green v. Schirio*, No. 18-CV-01641 (PKC/LB), 2019 WL 1765220 (E.D.N.Y. Apr. 22, 2019). In the April 22, 2019 decision, U.S. District Court Judge Pamela K. Chen granted a motion to dismiss filed on behalf of one of the doctors who plaintiff claimed failed to ensure that his records were accurate and failed to "notify" "necessary parties" that the records were missing documentation of any treatment for syphilis. *Id.* at *7. Judge Chen denied a motion to dismiss for failure to state a claim as to the "City Defendants," who moved to dismiss based on the statute of limitations and defects in service. *Id.* at *3-6. Plaintiff's related case does not affect the court's decision herein. Defendant Haimes's motion is for summary judgment and is fully supported by his declaration, plaintiff's medical records, and plaintiff's deposition.

[2] Ulster may have been the reception facility, from which plaintiff was transferred to more permanent housing.

2

plaintiff states that he believed that "no problems existed, pertaining to the disease." (SAC ¶ 22). Plaintiff states that from July 2013 until October of 2015, he never received treatment, care, or follow-up for his condition. (SAC ¶ 23).

In October of 2015, plaintiff was transferred to Five Points Correctional Facility ("Five Points"), where he remained until April of 2016. (SAC ¶ 24). While incarcerated at Five Points, plaintiff was under the medical care of defendant Physician's Assistant ("PA") David Haimes. (SAC ¶ 24). Plaintiff states that he underwent further testing to "determine the status of the disease." (*Id.*) Plaintiff claims that on approximately February 12, 2016, the test results indicated that "the disease was still active and in need of treatment." (SAC ¶ 25). As a result, plaintiff was given some pills to take. Plaintiff was told by an unidentified nurse that the pills were "penicillin." (*Id.*) Plaintiff states that he took the pills, but he later found out that they were "Zithromax," which is not the "standard" and "accepted" treatment for syphilis. (*Id.*) Plaintiff states that no further testing was done to determine whether the treatment had been effective. (*Id.*)

Plaintiff claims that he later spoke with Dr. Neil Trachtman at Washington Correctional Facility ("WCF"), who allegedly told plaintiff that defendant Haimes and the unidentified nurse[3] "departed" from the accepted and standard treatment for syphilis and failed to provide adequate medical care and follow-up to confirm if the treatment had been successful. (SAC ¶ 25). Plaintiff states that defendant Haimes and the nurse were both "negligent" in their duties and committed medical malpractice, by failing to

---

[3] Only PA Haimes remains as a defendant in this action. The unidentified nurse, as well as other identified and unidentified defendants have been dismissed from this action by prior orders of the court.

3

investigate, by delaying treatment, and by failing to provide proper treatment for plaintiff's condition. (*Id.*)  Plaintiff was transferred out of Five Points on April 21, 2016. (SAC ¶ 26).  Plaintiff makes various allegations about the care he ultimately received and the medical personnel to whom he spoke after his transfer as relevant to the care he received at Five Points from defendant Haimes.[4]  Rather than reciting all of the facts in this section, the court will discuss plaintiff's additional facts during the analysis of defendant's motion for summary judgment.  In support of his motion for summary judgment, defendant has filed his declaration, plaintiff's relevant medical records, and the transcript of plaintiff's deposition, taken on December 3, 2019. (Dkt. Nos. 45-3 (Haimes Decl.); 45-4 (Exhibit A to Zapp Declaration-Deposition Transcript); 46 (medical records)).

## II.  **Summary Judgment**

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006).  "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment.  *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219,

---

[4] Plaintiff claims that he received inadequate care at subsequent facilities, ultimately making this determination in 2017 when he discovered that he had "neurosyphilis" which had to be treated and for which he was given intravenous penicillin. (SAC ¶¶ 27-34).

4

1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord*, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). However, in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin*, 467 F.3d at 272.

### III. Deliberate Indifference to Medical Needs

#### A. Legal Standard

In order to state a claim based on constitutionally inadequate medical treatment, the plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). There are two elements to the deliberate indifference standard. *Smith v. Carpenter*, 316 F.3d 178, 183–84 (2d Cir. 2003). The first element is objective and measures the severity of the deprivation, while the second element is subjective and ensures that the defendant acted with a sufficiently culpable state of mind. *Id.* at 184 (citing *inter alia Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

##### 1. Objective Element

In order to meet the objective requirement, the alleged deprivation of adequate medical care must be "sufficiently serious." *Benjamin v. Pillai,* — Fed. App'x —, No. 18-545-pr, 2019 WL 5783304, at *2 (2d Cir. 2019) (citing *Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006)). Determining whether a deprivation is sufficiently serious also involves two inquiries. *Salahuddin*, 467 F.3d at 279. The first question is whether the plaintiff was actually deprived of adequate medical care. *Id.* Prison officials who act "reasonably" in response to the inmates health risk will not be found liable under the Eighth Amendment because the official's duty is only to provide "reasonable care." *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 844–47 (1994)).

The second part of the objective test asks whether the purported inadequacy in the medical care is "sufficiently serious." *Id.* at 280. The court must examine how the care was inadequate and what harm the inadequacy caused or will likely cause the plaintiff. *Id.* (citing *Helling v. McKinney*, 509 U.S. 25, 32–33 (1993)). If the "unreasonable care" consists of a failure to provide *any* treatment, then the court examines whether the inmate's condition itself is "sufficiently serious." *Id.* (citing *Smith*, 316 F.3d at 185–86). However, in cases where the inadequacy is in the medical treatment that was actually afforded to the inmate, the inquiry is narrower. *Id.* If the issue is an unreasonable delay or interruption of ongoing treatment, then the "seriousness" inquiry focuses on the challenged delay itself, rather than on the underlying condition alone. *Id.* (citing *Smith*, 316 F.3d at 185). The court in *Salahuddin* made clear that although courts speak of a "serious medical condition" as the basis for a constitutional claim, the seriousness of the condition is only one factor in determining whether the deprivation of adequate medical care is sufficiently serious to establish constitutional liability. *Id.* at

6

280.

### 2. Subjective Element

The second element is subjective and asks whether the official acted with "a sufficiently culpable state of mind." *Id.* (citing *Wilson v. Seiter*, 501 U.S. 294, 300 (1991)). In order to meet the second element, plaintiff must demonstrate more than a "negligent" failure to provide adequate medical care. *Id.* (citing *Farmer*, 511 U.S. at 835–37). Instead, plaintiff must show that the defendant was "deliberately indifferent" to that serious medical condition. *Id.* Deliberate indifference is equivalent to subjective recklessness. *Id.* (citing *Farmer*, 511 U.S. at 839–40).

In order to rise to the level of deliberate indifference, the defendant must have known of and disregarded an excessive risk to the inmate's health or safety. *Abreu v. Lipka,* 778 Fed. App'x 28, 32 (2d Cir. 2019) (quoting *Smith,* 316 F.3d at 184). The defendant must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he or she must draw that inference. *Chance*, 143 F.3d at 702 (quoting *Farmer*, 511 U.S. at 837). The defendant must be subjectively aware that his or her conduct creates the risk; however, the defendant may introduce proof that he or she knew the underlying facts, but believed that the risk to which the facts gave rise was "insubstantial or non-existent." *Farmer*, 511 U.S. at 844. The court stated in *Salahuddin* that the defendant's belief that his conduct posed no risk of serious harm "need not be sound so long as it is sincere," and "even if objectively unreasonable, a defendant's mental state may be nonculpable." *Salahuddin*, 467 F.3d at 281.

Additionally, a plaintiff's disagreement with prescribed treatment does not rise to

7

the level of a constitutional claim. *Riddick v. Maurer,* 730 Fed. App'x 34, 38 (2d Cir. 2018) (quoting *Chance*, 143 F.3d at 703). Prison officials have broad discretion in determining the nature and character of medical treatment afforded to inmates. *Sonds v. St. Barnabas Hosp. Correctional Health Services*, 151 F. Supp. 2d 303, 311 (S.D.N.Y. 2001) (citations omitted). An inmate does not have the right to treatment of his choice. *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986). Because plaintiff might have preferred an alternative treatment or believes that he did not get the medical attention he desired does not rise to the level of a constitutional violation. *Id.*

Disagreements over medications, diagnostic techniques, forms of treatment, the need for specialists, and the timing of their intervention implicate medical judgments and not the Eighth Amendment. *Sonds*, 151 F. Supp. 2d at 312 (citing *Estelle v. Gamble*, 429 U.S. at 107). Even if those medical judgments amount to negligence or malpractice, malpractice does not become a constitutional violation simply because the plaintiff is an inmate. *Id.; see also Daniels v. Williams*, 474 U.S. 327, 332 (1986) (noting that negligence is not actionable under § 1983). Thus, any claims of malpractice, or disagreement with treatment are not actionable under § 1983.

### B. Application

Defendant argues that plaintiff did not have a sufficiently serious condition, and even if the condition were sufficiently serious, the records do not show that he was deliberately indifferent to those serious medical needs. (Haimes Decl. *generally*). Defendant Haimes has filed plaintiff's medical records in support of his argument. Defendant Haimes states that he is a retired physician's assistant, formerly licensed to

8

practice in New York State, and who worked as a physician's assistant at Five Points from February 2008, until his retirement from DOCCS on February 27, 2018. (Haimes Decl. ¶ 1). DOCCS records reflect that plaintiff was transferred to Five Points on October 20, 2015 and was incarcerated there until his transfer on April 19, 2016. (Haimes Decl. ¶ 3 & Ex. A)[5]. Defendant Haimes first examined the plaintiff in January of 2016 for an unrelated knee problem and prescribed pain medication. (Haimes Decl. ¶ 5 & Ex. B).

During the same appointment, and based on plaintiff's history, defendant Haimes requested a "rapid plasma regain" ("RPR") test and a "prostate specific antigen" ("PSA") test. (Haimes Decl. ¶ 5 & Ex. B). Defendant Haimes explains that the RPR is a test to screen an individual for syphilis, and the PSA is a test to screen for prostate cancer. (Haimes Decl. ¶ 6). Defendant Haimes states that these blood tests are taken at Five Points by an outside company, approximately four weeks after the date that they are ordered. (*Id.*) In plaintiff's case, the tests were taken on February 4, 2016 by a "blood technician" from BioReferences Laboratories. (Haimes Decl. ¶ 7 & Ex. C (BioReferences Final Report dated 2/5/16)).

The RPR test works by detecting antibodies that are "produced by the body's defense mechanism in response to an infection of Treponema Pallidum, which is the bacterium which causes the disease syphilis." (Haimes Decl. ¶ 8). The test results showed that syphilis was active in plaintiff's system "at a level of 1:1 titer," "which indicated low activity of the infection." (Haimes Decl. ¶ 11 & Ex. C). Plaintiff's

---

[5] The exhibits to defendant Haimes's declaration are plaintiff's Ambulatory Health Records ("AHR"), filed at Dkt. No. 46.

records show that he met with DOCCS Regional Infection Control Nurse ("IC Nurse") on February 12, 2016 to discuss the results of the test. (Haimes Decl. ¶ 12 & Ex. D). The AHR entry for February 12, 2016 was written by the IC Nurse, and the nurse noted that the current level of infection was less that plaintiff's previous test. (Haimes Decl. ¶ 13 & Ex. D). The nurse's AHR entry further stated that plaintiff remembered getting shots for the disease back in 2012. (*Id.*)

Defendant Haimes states that, after speaking with plaintiff, the IC Nurse updated PA Haimes on plaintiff's condition. (Haimes Decl. ¶ 14). Defendant Haimes states that he called the Five Points Health Services Director ("HS Director") to discuss the plaintiff's test results and current medical condition. (Haimes Decl. ¶ 14). The HS Director advised PA Haimes to prescribe plaintiff a one-time dose of eight (8), two hundred-fifty (250) milligram tablets of Azithromycin (Zithromax) antibiotic pills to be administered orally. (*Id.*)

Defendant Haimes states that in 2016, this one-time Zithromax prescription was "widely accepted as a safe and effective form of treatment for individuals with syphilis." (Haimes Decl. ¶ 15). Defendant Haimes further states that this prescription was based on the advice of the HS Director, defendant Haimes's own personal judgment, and on plaintiff's low level of infection. (Haimes Decl. ¶ 16). Defendant Haimes states that plaintiff was given the medication by one of the staff nurses, and a follow-up appointment was not scheduled due to the low level of plaintiff's infection at that time. (Haimes Decl. ¶ 17). Defendant Haimes states that he met with plaintiff on February 26, 2016 for an unrelated ear wax issue, and plaintiff did not mention any issues with his syphilis. (Haimes Decl. ¶ 18 & Ex. E). Defendant Haimes did not meet with

plaintiff again, and plaintiff was transferred out of Five Points on April 19, 2016. (Haimes Decl. ¶ 19).

Even assuming that syphilis is a serious medical condition, the court agrees that there is no indication that defendant Haimes acted with deliberate indifference. Plaintiff did not contradict any of defendant Haimes's statements during his deposition, other than to claim that Zithromax was not an appropriate medication to treat syphilis. (Pl.'s Dep. at 35-36). Plaintiff cited absolutely no medical basis for his assertion, he only stated that it was in the "medical book" for syphilis. (Pl.'s Dep. at 36). He also testified that he made this determination by speaking with doctors who examined him after he left Five Points, including one doctor who allegedly prescribed intravenous "penicillin" after plaintiff was diagnosed with "neurosyphilis." (Pl.'s Dep. at 36, 43-46, 51-52). Plaintiff admitted that he did not know what Zithromax was, but that Dr. Trachtman told plaintiff that Zithromax was only used for dental infections.[6] (Pl.'s Dep. at 49-51, 57).

Plaintiff also testified at his deposition that the only basis for his claim against defendant Haimes is that he did not treat plaintiff's syphilis properly and used the incorrect medication. (Pl.'s Dep. at 38). Plaintiff has not established a question of fact regarding deliberate indifference. Plaintiff never complained to defendant Haimes about his condition in the first instance. Defendant Haimes took it upon himself to order the test for syphilis in addition to ordering a test for prostate cancer, based on plaintiff's prior medical history. When the test results were positive for the disease, defendant Haimes then prescribed the antibiotic after consulting with the HS Director.

---

[6] Plaintiff also mentions a "Dr. Susan Miller," who allegedly told plaintiff that his syphilis was "untreated" until he was given the penicillin shots. (Pl.'s Dep. at 51-52).

11

At worst, plaintiff alleges that defendant Haimes prescribed the wrong medication, which could constitute malpractice, but not deliberate indifference. *See Tindal v. Goord*, 340 F. App'x 12, 13 (2d Cir. 2009); *Tolliver v. Sidorowicz*, No. 16-CV-559 (VB), 2017 WL 835193, at *4 (S.D.N.Y. Mar. 2, 2017) ("It is well established that 'negligence, even if it constitutes medical malpractice, does not, without more,' give rise to a constitutional claim.") (quoting *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998)).  Plaintiff disagreement with the treatment he received does not rise to the level of a constitutional claim. *Fuller v. Lantz*, 549 F. App'x 18, 21 (2d Cir. 2013).  The fact that defendant Haimes did not "follow-up" to see that the medication was working also does not take this case to the constitutional level.  Plaintiff saw PA Haimes on February 26, 2016 for an unrelated issue and never mentioned any problems or requested a follow-up for his syphilis.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendant's motion for summary judgment (Dkt. No. 45) be **GRANTED**, and the second amended complaint (Dkt. No. 16) **DISMISSED IN ITS ENTIRETY**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: August 31, 2020

*[signature: Andrew T. Baxter]*

Andrew T. Baxter
U.S. Magistrate Judge